```
           IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                     AT CHARLESTON

_____x
                              :
UNITED STATES OF AMERICA,     :    Criminal Action
                              :
              Plaintiff,      :    No.  2:14-cr-00264
                              :
v.                            :
                              :    Date:  January 5, 2015
DENNIS P. FARRELL &           :
GARY L. SOUTHERN,             :
                              :
              Defendants.     :
_____x


           PARTIAL TRANSCRIPT OF MOTIONS HEARING HELD
        BEFORE THE HONORABLE THOMAS E. JOHNSTON, JUDGE
               UNITED STATES DISTRICT COURT
                IN CHARLESTON, WEST VIRGINIA

APPEARANCES:

For the Government:       AUSA PHILIP H. WRIGHT
                          AUSA LARRY R. ELLIS
                          AUSA ERIC P. BACAJ
                          U.S. Attorney's Office
                          P.O. Box 1713
                          Charleston, WV  25326-1713

For the Defendants:       MICHAEL W. CAREY, ESQ.
                          S. BENJAMIN BRYANT, ESQ.
                          Carey Scott Douglas & Kessler
                          P. O. Box 913
                          Charleston, WV 25323

                          ROBERT B. ALLEN, ESQ.
                          PAMELA C. DEEM, ESQ.
                          SAMUEL D. MARSH, ESQ.
                          Kay Casto & Chaney
                          P. O. Box 2031
                          Charleston, WV 25327-2031
```

```
APPEARANCES CONTINUED:

                         MARK C. MOORE, ESQ.
                         Nexsen Pruet
                         7th Floor
                         1230 Main Street
                         Columbia, SC 29201

                         WILLIAM W. WILKINS, ESQ.
                         Nexsen Pruet
                         Suite 400
                         55 East Camperdown Way
                         Greenville, SC  29601


Court Reporter:          Ayme Cochran, RMR, CRR

Proceedings recorded by mechanical stenography;
transcript produced by computer.
```

1     PARTIAL PROCEEDINGS had before The Honorable Thomas E.
2 Johnston, Judge, United States District Court, Southern District
3 of West Virginia, in Charleston, West Virginia, on January 5,
4 2014 at 1:32 p.m., as follows:
5         COURTROOM DEPUTY CLERK:  The matter before the Court is
6 the United States versus Dennis Farrell, et al., criminal action
7 number 2:14-cr-00264, scheduled for a motions hearing.
8         THE COURT:  Good afternoon.  Will counsel please note
9 their appearances?
10         MR. WRIGHT:  Good afternoon, Your Honor.  Philip
11 Wright, Larry Ellis, and Eric Bacaj on behalf of the United
12 States.
13         MR. ALLEN:  Good afternoon, Your Honor.  Robert B.
14 Allen, Mr. Billy Wilkins, Mr. Mark Moore, and both of them are
15 with Nexsen Pruet from Charleston, Columbia, and Greenville,
16 South Carolina.  At counsel table is Mr. Southern.  We also have
17 with us Ms. Deem, and Sam Marsh left the courtroom for a few
18 minutes, but he will be back, on behalf of Mr. Southern.
19         MR. CAREY:  Good afternoon, Your Honor.  Mike Carey and
20 Ben Bryant on behalf of defendant, Mr. Farrell, who is here in
21 person.
22         THE COURT:  All right.  Good afternoon.  I set this
23 matter, matter of the motions to disqualify today, earlier on
24 because I see it as a potential threshold issue and I thought it
25 was best to address it as soon as possible.

1  Let's -- let's start out with a couple of preliminary
2  matters.  First of all, let's talk about -- let me get a preview
3  of what we're going to get today.  As I read through the briefing
4  on this, it looked to me like it was mostly -- we were mostly
5  talking about a discussion of legal issues and it didn't look to
6  me like there would be a tremendous amount of disputed factual
7  matters.  Are we intending to -- are we expecting this to be a
8  factually disputed hearing or are we going to mostly be talking
9  about legal issues?
10       MR. ALLEN:  Your Honor, I think we're probably talking
11  mostly about legal issues due to the United States'
12  representation that recusal in this district is unprecedented and
13  there's no history or no precedent of any recusals in this
14  district.
15     We have subpoenaed two individuals, Judge King and Warren
16  Upton, a former United States Attorney, who you are familiar
17  with, on prior recusals and, if the judge would like to hear
18  their testimony, or we can make representations to the Court
19  regarding those recusals.
20      There are two, in particular, the FMC one, and then one was
21  Truman Chaffin.  Truman Chaffin occurred under Rebecca Betts when
22  she was U. S. Attorney; and then the one for FMC was when Judge
23  King was the United States Attorney.  They've been subpoenaed.
24  They're available.
25       I did -- there was a Motion to Quash and a Motion in Limine

1  with regard to Judge King, but they're under subpoena and they
2  are available, if the judge would like to hear from them. The
3  rest of them, I think, are pretty much legal issues.
4         THE COURT: Well, my thought was that, rather than
5  spend a lot of time on presenting evidence today, that perhaps we
6  could proceed by proffer with regard to the facts because, again,
7  as I look at it, I doubt that there are many facts involved here
8  that are going to be particularly disputed.
9      Does anybody have any objection to proceeding by proffer, at
10 least until that becomes -- if and when that becomes a problem?
11        MR. ALLEN: No objection on behalf Mr. Southern.
12        MR. CAREY: No objection at this time, Your Honor,
13 subject to reservation on how it proceeds and may make a request
14 to supplement the record, at some point.
15        MR. WRIGHT: Your Honor, if the proffer is going to
16 involve a revelation of information that is confidential and that
17 was not disclosed publicly about prior recusals in this office,
18 then I object to even a proffer. It's irrelevant and I think the
19 revelation and use of the information by an attorney against and
20 to the disadvantage of a former client is a violation of Rule
21 1.9(c) of the Rules of Professional Conduct, as well as a
22 violation of the West Virginia Rules of Professional Conduct.
23 So, if we're going to talk about a proffer relating to recusals
24 that happened over 35 years ago, then we object to that.
25     In terms of whether it's relevant or not, we believe it's

1  irrelevant.  The argument about whether or not a recusal is
2  unprecedented in this district, Your Honor, is about whether the
3  defendant, under the guise of the due process clause, or
4  fairness, or impartiality, or whatever standard they think
5  applies can be used to recuse an entire United States Attorney's
6  Office over the objection of the Department of Justice.  That
7  would be unprecedented.  And the fact that the department, where
8  some other matter involved the recusal on the Rules of
9  Professional Conduct or circumstances that are not pertinent here
10 is irrelevant and should not be brought forth.
11          MR. ALLEN:  They're the ones that said it's
12 unprecedented to have a recusal in the Southern District of West
13 Virginia, Judge, and we're prepared to address that, and I don't
14 think -- I don't think they're probably going to dispute -- I
15 don't see how they can dispute the fact that there was a recusal
16 of the United States Attorney's Office in the Truman Chaffin
17 case, as well as the FMC case, and I think Mr. Moore has some
18 information with regard to a third situation that existed here in
19 the Southern District of West Virginia and, in fact, worked with
20 Mr. Ellis.
21          MR. WRIGHT:  And, Your Honor, that information is
22 confidential.  That information is not public and the use of it
23 in revelation here right now seriously implicates Rule 1.9.
24          THE COURT:  All right.  I'm a little bit concerned
25 about this discussion that we're getting into here, so I think

1  I'm going to ask counsel and their clients, at least one counsel
2  per party, maybe we'll try to keep it to one counsel per party,
3  because I can only accommodate so much of a crowd up here. I
4  think we need to talk about this at the bench, but the parties
5  need to be up here.
6       MR. ALLEN: Your Honor, Mr. Mark Moore would represent
7  Mr. Southern in this conference since he has more background
8  information regarding this recusal.
9       THE COURT: All right. Fair enough.
10    (At side-bar).
11       THE COURT: All right. I'm a little concerned about
12  all of this because, first of all, I'm asking myself, well, okay,
13  maybe it's happened before, maybe it hasn't. Why is that really
14  relevant here?
15    I know that the government has made a representation it's
16  unprecedented. I'm a former U. S. Attorney, too. I have some
17  sense of when these things happen and when they don't. I don't
18  know how, to what extent this is, whether or not it's happened
19  before is really going to play that much of a role in my decision
20  in this matter. So, and I also -- maybe I'm remembering -- for
21  example, this Truman Chaffin thing, how far back does that go?
22       MR. MOORE: That was 1995, as I understand it, Your
23  Honor. I have a number of cases which I am prepared to discuss
24  which are recusals in various districts, and I brought Pacer
25  printouts with me that indicate that there was an attorney from

1  someone other than the United States Attorney's Office in that
2  district who handled the case.
3      I am also -- a lot of those cases are cases that I know a
4  good bit about because I was Assistant U. S. Attorney and a
5  supervisory Assistant United States Attorney in the District of
6  South Carolina, and I also handled a number of recusal cases for
7  the department.  One of those recusal cases was a matter which
8  was pending in this district and it was a case where there was a
9  conflict.  The U. S. Attorney's Office referred that matter to
10 General Counsel.
11     I was brought in.  I ultimately -- I later determined, after
12 the United States Attorney left the office -- I later determined,
13 after the United States Attorney left the office, that there was
14 no conflict and the case went back to that office.  I'm assuming
15 that's the case that they don't want me to talk about.
16         THE COURT:  You know, I have my own experiences as U.
17 S. Attorney.  I was recused in two -- at least two cases, maybe
18 three, that I can think of.  I know the process.  I'm familiar
19 with all of this.
20         MR. MOORE:  Yes, sir.
21         THE COURT:  I'm just trying to decide to what extent I
22 really need to delve into this.  It seems to me this matter is
23 going to either rise or fall on its own merits as opposed to
24 other cases that may be factually distinct from this, so why
25 should we get into this at all?

1    MR. MOORE: One of those cases involves a case where
2    the acting United States Attorney in South Carolina was a victim.
3    THE COURT: Is that a -- is that a case where something
4    -- there's something I can use as a precedent? Is there
5    something out there with a record on that? I mean, do you have a
6    decision of a court on that?
7    MR. MOORE: I don't have a decision of a court on it
8    because, as Your Honor knows from your time as U. S. Attorney,
9    usually what happens is the United States Attorney's Office
10   reports the conflict to General Counsel and General Counsel takes
11   care of it behind the scenes and handles the recusals themselves.
12   One of our concerns in this case is that we have not gotten
13   an answer and this office raised the issue with General Counsel,
14   as the U. S. Attorney's Manual requires them to do.
15   THE COURT: That's a different issue. In fact, I have
16   questions about that because, when I was U. S. Attorney, I viewed
17   the Office of General Counsel as my lawyer. So it seems to me
18   there's a question there as to whether or not that sort of thing
19   is privileged.
20   MR. MOORE: I understand the substance of the
21   communication is privileged. We're asking questions about
22   whether there was communication, period, not the substance of the
23   communication.
24   THE COURT: I'm not so sure that that answers the
25   question, but I'm just sitting here questioning whether we need

1  to dig into this because of my familiarity with the Justice
2  Department and its practices and policies and the U. S.
3  Attorney's Manual and the fact that, even if, in the history of
4  the Republic, it's never happened before, if I think it's
5  appropriate, I'll do it.  That's not to say that I am going to
6  find it appropriate.
7          MR. ALLEN:  I understand, Your Honor.
8          THE COURT:  But I could -- well, whether or not there's
9  a precedent for this, if there's an otherwise legal basis for it,
10 I could really care less.  So, my question is, do we really need
11 to dive into this?
12         MR. WRIGHT:  May I speak?
13         THE COURT:  You may.
14         MR. WRIGHT:  Your Honor, that is exactly our position.
15 We don't dispute that this office has on occasion been recused on
16 certain matters that are not relevant here.  We believe, as the
17 Court pointed out, that the merits of a recusal issue in this
18 case shall rise and fall on the facts as they pertain here, and
19 not something that happened in 1995, and not something that
20 happened in 1978.
21      Mr. Moore, I've met him today -- I'm assuming this is Mr.
22 Moore -- and we talk about matters that occurred and -- that
23 occurred, I think he said, on the inside, I forget the exact
24 wording he used, but internal information to the Department of
25 Justice.  That's the basis for our Motion to Quash beyond the

irrelevancy of it, but also, the Motion in Limine. He cannot ethically reveal inside information about a former client to the disadvantage of that former client. The former client is the United States. We stand here representing the United States. I am objecting now to Mr. Moore's attempt to use inside information to the disadvantage of a former client and to even reveal it. That's what we're saying is under Rule 1.9.

Beyond that, Your Honor, all of this is irrelevant. I think we should go to the legal arguments. And I can cut this off, as far as the U. S. Attorney's Manual. I am not allowed to disclose confidential information or confidential communications.

I have been authorized to states this. We have consulted with the appropriate officials in Washington with the Department of Justice. We have complied with the requirements of the U. S. Attorney's Manual. This office continues to represent the United States in this case and there will not be a recusal from the Department of Justice forthcoming in this case.

THE COURT: Well, I think what I'm going to do is, because I haven't had a chance to look at this and it sounds like the further we talk about it, the more the issues we get, I'm not going to get into this today, but I will give you all an opportunity to convince me to get into this at another time. There's too much here for me to delve into and I'm completely unfamiliar for me to make a decision. So, we're not going to get into this today, but you may convince me to get into it another

1   time.
2           MR. MOORE: Yes, sir.
3           THE COURT: Now, while we're here, this is a matter of
4   curiosity, as anything. When I was at the United States
5   Attorney's Office, there was a U. S. Department -- the guy was
6   David Margolis. Is he still there or is he retired?
7           MR. WRIGHT: I think he's still there, Your Honor.
8           MR. MOORE: He's still there.
9           THE COURT: So my question for you is, has this not --
10  has this been run by him?
11          MR. WRIGHT: None of our officials there have talked --
12  now whether or not they've talked to him -- but we have not
13  talked to him.
14          MR. MOORE: One of our questions would be, when did
15  this communication occur? Did it occur pre- or post-indictment?
16  Did it -- did they not consult until after we raised the issue?
17          THE COURT: Well, I think that falls in the category of
18  what I'm uncomfortable getting into.
19          MR. MOORE: I understand.
20          THE COURT: I'd be very curious. I know David
21  Margolis, and there are very few people in the public service I
22  have a greater regard for than David Margolis, and this is
23  something, if I was U. S. Attorney, I would have talked to David
24  Margolis about. Now there's nothing in the U. S. Attorney's
25  Manual that says, "I shall talk to David Margolis."

```
1                MR. ALLEN:  Right.
2                THE COURT:  But anybody with the U. S. Department of
3    Justice knows what his role is, and I'm not saying that there was
4    anything that said you had to talk to him, but if you had talked
5    to him, I would have been interested to see what he had to say
6    about it because I think a lot of his opinion, but we don't have
7    that, so we're going to move on.  We'll leave this issue for
8    another day.
9                MR. MOORE:  All right.  I understand, Your Honor.
10        (Side-bar concludes.)
11               THE COURT:  All right.  Just to make the conclusion of
12   our discussion a matter of -- open to the public, we're going to
13   defer those issues for another day.
14        (Further proceedings held thereafter.)
15
16
17   CERTIFICATION:
18        I, Ayme A. Cochran, Official Court Reporter, certify that
19   the foregoing is a correct transcript from the record of
20   proceedings in the matter of United States of America, Plaintiff
21   v. Dennis P. Farrell & Gary L. Southern, Defendants, Criminal
22   Action No. 2:14-cr-00264, as reported on January 5, 2015.
23
24   s/Ayme A. Cochran, RMR, CRR                        January 9, 2015
25   Ayme A. Cochran, RMR, CRR                                     DATE
```