IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

_____x
                               :
UNITED STATES OF AMERICA,       :        Criminal Action
                               :
              Plaintiff,        :        No.  2:14-cr-00264
                               :
v.                             :
                               :        Date:  March 16, 2015
WILLIAM TIS,                    :
                               :
              Defendant.        :
_____x


TRANSCRIPT OF PLEA HEARING HELD
BEFORE THE HONORABLE THOMAS E. JOHNSTON, JUDGE
UNITED STATES DISTRICT COURT
IN CHARLESTON, WEST VIRGINIA

APPEARANCES:

For the Government:         AUSA PHILIP H. WRIGHT
                            AUSA LARRY R. ELLIS
                            AUSA ERIC P. BACAJ
                            U.S. Attorney's Office
                            P.O. Box 1713
                            Charleston, WV  25326-1713


For the Defendant:          KATHLEEN A. GALLAGHER, ESQ.
                            Eckert Seamans Cherin & Mellott
                            44th Floor
                            600 Grant Street
                            Pittsburgh, PA 15219

                            MARK C. LEVY, ESQ.
                            Eckert Seamans Cherin & Mellott
                            Two Liberty Place, 22nd Floor
                            50 South 16th Street
                            Philadelphia, PA 19102

                            JOHN A. CARR, ESQ.
                            Suite 209
                            179 Summers Street
                            Charleston, WV 25301

Probation Officer:          Matthew Lambert


Court Reporter:             Ayme Cochran, RMR, CRR

Proceedings recorded by mechanical stenography;
transcript produced by computer.

1          PROCEEDINGS had before The Honorable Thomas E. Johnston,

2     Judge, United States District Court, Southern District of West

3     Virginia, in Charleston, West Virginia, on March 16, 2015, at

4     10:03 a.m., as follows:

5          COURTROOM DEPUTY CLERK:  The matter before the Court is

6     the United States of America versus William Tis, criminal action

7     number 2:14-cr-00264-2, scheduled for plea hearing.

8          THE COURT:  Good morning.  Will counsel please note

9     their appearances?

10          MR. WRIGHT:  Good morning, Your Honor.  Philip Wright,

11     Larry Ellis and Eric Bacaj, on behalf of the United States.

12          MS. GALLAGHER:  Kathleen Gallagher, Mark Levy and John

13     Carr, on behalf of the defendant, William Tis.

14          THE COURT:  Good morning.

15        Mr. Tis, will you please stand, and I will ask the deputy

16     clerk to administer an oath to you at this time.

17          COURTROOM DEPUTY CLERK:  Please raise your right hand.

18                  **WILLIAM TIS, DEFENDANT, SWORN**

19          THE COURT:  You may be seated.

20        Mr. Tis, do you understand that you are now under oath and

21     you must tell the truth and, if you testify falsely, you may face

22     prosecution for perjury or for making a false statement?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  All right.  Throughout the course of this

25     hearing, I'm going to be asking you a number of questions and I

1    want to make sure that you and I are communicating clearly.  So,

2    if at any time I ask a question that you don't understand or that

3    anything else occurs in this hearing that you do not understand,

4    I want you to feel free to speak up and seek clarification.

5         Also, if at any time you need to confer with your attorneys,

6    I'll be pleased to pause the proceedings to allow you to do so.

7         Do you understand all that?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  All right.  Let me begin by asking you, how

10   old are you?

11             THE DEFENDANT:  60.

12             THE COURT:  And can you briefly describe your

13   educational background?

14             THE DEFENDANT:  I graduated from Pennsylvania State

15   University in 1976 with a degree in Science, majors in Chemistry

16   and Physics.

17             THE COURT:  Just for the record, can you read and write

18   and understand the English language?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  Can you briefly describe your work

21   experience?

22             THE DEFENDANT:  39 years almost exclusively in the

23   specialty chemical industry developing formulations and then

24   taking those to market.

25             THE COURT:  Have you taken any medicine or drugs or

```
1    consumed any alcoholic beverages within the last 24 hours?

2              THE DEFENDANT:  No, sir.

3              THE COURT:  Including prescription drugs?

4              THE DEFENDANT:  I did take Amlodipine yesterday morning

5    for high blood pressure, but not this morning.

6         THE COURT:  All right.  To the best of your knowledge, as

7    you sit here today, are you suffering from any side effects from

8    that medication that would in any way affect your ability to

9    fully participate in this hearing today?

10             THE DEFENDANT:  No, Your Honor.

11             THE COURT:  Have you ever been treated for any mental

12   illness or addiction to drugs of any kind?

13             THE DEFENDANT:  No, sir.

14             THE COURT:  Do you know where you are and why you are

15   here today?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  Do you have any hearing impairment or other

18   disability which would prevent you from fully participating in

19   this hearing today?

20             THE DEFENDANT:  Not with the microphones.

21             THE COURT:  Well, you have some hearing problems?

22             THE DEFENDANT:  Many, many years of being in industrial

23   plants with pumps and motors, I have some hearing loss, tinnitus,

24   but I can hear you fine.

25             THE COURT:  All right.  Well, if at any point in this
```

```
 1    hearing you are unable to hear something or someone that's
 2    speaking, I want you to speak up and let us know, because it's
 3    important that you hear and understand the entire proceeding.
 4              THE DEFENDANT:  Understood.
 5              THE COURT:  All right.  Who is going to speak on behalf
 6    of the -- who is -- Ms. Gallagher?
 7              MS. GALLAGHER:  Yes.
 8              THE COURT:  Do you have any reason to question the
 9    competence of your client?
10              MS. GALLAGHER:  No, sir.
11              THE COURT:  All right.  I have been provided, I
12    believe, with the original of the plea agreement.
13         First of all, Mr. Wright, is this -- has the agreement
14    changed in any way since the courtesy copy that I received in my
15    chambers?
16              MR. WRIGHT:  No, Your Honor.
17              THE COURT:  All right.  Very well.
18         And, Mr. Tis, is this your -- is that your signature that
19    appears on the seventh and final page of the plea agreement?
20              THE DEFENDANT:  Yes, it is, Your Honor.
21              THE COURT:  And are those your initials that appear on
22    the other pages of the plea agreement?
23              THE DEFENDANT:  Yes, sir.
24              THE COURT:  And have you read and reviewed with your
25    counsel each of the 16 paragraphs of the plea agreement and
```

```
 1    exhibit attached thereto?
 2              THE DEFENDANT:  I have, Your Honor.
 3              THE COURT:  And do you wish to have the various terms
 4    of the plea agreement orally stated on the record, or do you
 5    believe that that's unnecessary?
 6              THE DEFENDANT:  I don't think that's necessary, sir.
 7              THE COURT:  All right.  And do you understand and agree
 8    with all of the terms and provisions contained in the plea
 9    agreement?
10              THE DEFENDANT:  I do, Your Honor.
11              THE COURT:  Ms. Gallagher, have you reviewed each of
12    the paragraphs of the plea agreement and its exhibit with your
13    client?
14              MS. GALLAGHER:  Yes, sir.
15              THE COURT:  And, Ms. Gallagher and Mr. Wright, is there
16    any reason why either of you believe that the various terms of
17    the plea agreement should be orally stated on the record?
18              MR. WRIGHT:  No, Your Honor.
19              MS. GALLAGHER:  No, sir.
20              THE COURT:  All right.  Well, nonetheless, Mr. Tis,
21    there are some provisions of the plea agreement that I want to go
22    over with you, beginning on Page 4, with the section entitled
23    "Stipulation of Facts and Waiver of Federal Rule of Evidence
24    410".
25         Now, this section relates to a couple of different matters,
```

1    the first of which is the Stipulation of Facts, which is attached

2    to the plea agreement as Exhibit A, and I want to turn your

3    attention to that document now.  That is a four-page document

4    and, on the fourth page, is that your signature which appears

5    there?

6           THE DEFENDANT:  Yes, it is, Your Honor.

7           THE COURT:  All right.  And have you read the

8    Stipulation of Facts?

9           THE DEFENDANT:  Yes, Your Honor, I have.

10           THE COURT:  And do you agree that all of the facts

11    contained in the stipulation are true?

12           THE DEFENDANT:  Yes, Your Honor.

13           THE COURT:  All right.  A little bit about what will be

14    happening from here on out.  I will be asking the probation

15    officer to prepare a Presentence Investigation Report.  That

16    report will contain detailed recommended factual findings

17    regarding this offense and your background, among other things.

18       Ultimately, at sentencing, I will make factual findings

19    based at least in part on the recommendations contained in the

20    Presentence Report.

21       Now, you and the government have reached an agreement

22    regarding certain facts contained in this stipulation, but I want

23    you to understand that in this process, neither the probation

24    officer, nor this Court, are bound by that Stipulation of Facts.

25    Do you understand that?

1          THE DEFENDANT:  I do.

2          THE COURT:  And do you further understand that if I

3   make factual findings at sentencing that are different from or

4   inconsistent with the facts contained in the stipulation, you

5   will still be bound by your guilty plea and would have no right

6   to withdraw it?  Do you understand?

7          THE DEFENDANT:  Yes, I do.

8          THE COURT:  Anything about that that you don't

9   understand?

10          THE DEFENDANT:  No, sir.

11          THE COURT:  All right.  The other matter addressed in

12   Section 10 of the plea agreement on Page 4 is a Waiver of Federal

13   Rule of Evidence 410.

14      Now, first of all, do you understand that a waiver is a

15   legal term that means you're giving something up?

16          THE DEFENDANT:  I do.

17          THE COURT:  All right.  Now, Rule 410 generally

18   provides that information or documents regarding plea

19   negotiations, and this Stipulation of Fact would fall into that

20   category, are generally not admissible at trial; in other words,

21   they can't be -- the government can't use that against you at

22   trial.

23      However, if you withdraw from this plea agreement or it's no

24   longer any good as a result of your violation of one or more of

25   its terms and there is a subsequent trial, that under this

1    waiver, the government would be allowed to present the

2    Stipulation of Facts in its case in chief or for other purposes

3    at a subsequent trial.  Do you understand that waiver?

4            THE DEFENDANT:  Yes, Your Honor, I do.

5            THE COURT:  All right.  Next, I want to refer you to

6    Section 12 of the plea agreement, which starts on Page 4 and runs

7    over onto Page 5, and is entitled "Waiver of Appeal and

8    Collateral Attack".  Now, before we get into this section,

9    there's a couple of things I want to discuss with you.

10       First of all, this section relates to a couple of different

11   procedures that I want to describe to you briefly.

12       An "appeal" is a procedure by which a party to a case before

13   a District Court like this one and, in a criminal case, it is

14   often the defendant, goes to the Court of Appeals, which is the

15   next level up of the court system, and argues that certain errors

16   or mistakes may have taken place in their criminal case before

17   the District Court.

18       A "collateral attack" is similar, but it is a separate civil

19   case that may be filed after a defendant's criminal case is over.

20   It's sometimes referred to as a "habeas corpus petition", in

21   which the defendant may also argue that certain errors or

22   mistakes may have taken place in their criminal case before the

23   District Court.

24       Now, do you understand those two procedures, at least as

25   I've briefly described them to you?

1            THE DEFENDANT:  Yes, Your Honor.

2            THE COURT:  All right.  The other matter I want to go

3    over with you before we get into Section 12 is a brief

4    explanation of the two phases of a criminal case.  There are two

5    phases roughly -- or generally of a criminal case.  The first is

6    the guilt or innocence phase in which that determination is made.

7    It starts at the very beginning of the case and includes all

8    proceedings leading up to that determination.  Sometimes, guilt

9    or innocence is determined by a trial.  Much more often, it's

10   determined by a guilty plea, like what we're doing today.

11      Once guilt has been established, then a second phase comes,

12   and that is the penalty phase in which, obviously, the penalty is

13   determined, and that is generally concluded with a sentencing

14   hearing at the end of the case.

15      Now, do you understand the two phases of a criminal case as

16   I've described them to you?

17            THE DEFENDANT:  Yes, Your Honor.

18            THE COURT:  All right.  With all of that being said

19   then, the first paragraph of Section 12 includes an appeal waiver

20   and I want to go over that with you now.

21      Do you understand that you waive the right to appeal your

22   conviction, and any sentence of imprisonment, fine or term of

23   probation, or the manner in which the sentence was determined on

24   any ground whatsoever, with one exception.  You may appeal any

25   sentence that is greater than the maximum penalty set forth by

1    statute.  Do you understand that waiver?

2           THE DEFENDANT:  Yes, Your Honor.

3           THE COURT:  Anything about it that you don't understand

4    or that you have questions about?

5           THE DEFENDANT:  No, sir.

6           THE COURT:  All right.  In the second paragraph of

7    Section 12 then, do you also understand that you may not file a

8    later civil proceeding, sometimes referred to as a "collateral

9    attack", or a habeas corpus petition, challenging your plea,

10   conviction or sentence?

11          THE DEFENDANT:  Yes, Your Honor, I do.

12          THE COURT:  Finally, do you understand that you are in

13   no event waiving your right to claim ineffective assistance of

14   counsel either on appeal or by collateral attack?

15          THE DEFENDANT:  I do.

16          THE COURT:  All right.  Next, I want to refer you to

17   Section 13 of the plea agreement, which appears on Page 5, and is

18   entitled "Waiver of FOIA and Privacy Right".  Now, this waiver

19   means you can't go back after this case is over and seek

20   documents or other information about the case from the

21   government, even with a Freedom of Information Act request.  Do

22   you understand that waiver?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  All right.  Ms. Gallagher, have you

25   thoroughly reviewed the plea agreement with your client?

1          MS. GALLAGHER:  Yes, sir.

2          THE COURT:  And do you believe that he fully

3    understands the various terms and provisions of the plea

4    agreement, including the waivers and other matters that I have

5    gone over with him this morning?

6          MS. GALLAGHER:  Yes, sir.

7          THE COURT:  Mr. Tis, have you reviewed the plea

8    agreement in detail with your attorneys?

9          THE DEFENDANT:  Yes, sir, I have.

10          THE COURT:  And do you believe that you have had

11    adequate time to discuss your case fully with your attorneys?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  And have your attorneys answered any

14    questions that you've had about your case?

15          THE DEFENDANT:  Yes, they have, Your Honor.

16          THE COURT:  Ms. Gallagher, during your representation

17    of the defendant, has he been cooperative?

18          MS. GALLAGHER:  Yes, sir.

19          THE COURT:  Mr. Tis, has anything further been agreed

20    to, either orally or in writing, that is not contained in the

21    plea agreement?

22          THE DEFENDANT:  No, Your Honor.

23          THE COURT:  All right.  I will order that the plea

24    agreement be filed.

25          I will find that the defendant understands and agrees with

1    the terms contained in the plea agreement.

2        I will defer accepting or rejecting the plea agreement until

3    sentencing, after the Presentence Report has been received and

4    considered.

5        Now, Mr. Tis, have you received and read and reviewed with

6    your attorneys the superseding indictment returned by the federal

7    grand jury?

8            THE DEFENDANT:  Yes, Your Honor, I have.

9            THE COURT:  All right.  And do you understand the

10   charges contained in the superseding indictment?

11           THE DEFENDANT:  Yes, Your Honor, I do.

12           THE COURT:  Would you like me to read the superseding

13   indictment to you or will you waive the reading of the

14   superseding indictment?

15           THE DEFENDANT:  I'd like to waive that reading, please.

16           THE COURT:  All right.  And I understand you will be

17   pleading guilty to Count 2 of the superseding indictment, which

18   charges you with causing unlawful discharge of refuse matter into

19   navigable water in violation of 33 U. S. C. Section 407 and 411.

20   Now, I want to go over that charge and the statute with you in

21   just a little bit more detail.  Section 407 of Title 33 provides

22   in pertinent part that:

23   "It shall be unlawful to cause to be discharged, or

24   deposited from the shore any refuse matter of any kind or

25   description whatever other than that flowing from streets and

```
1    sewers and passing therefrom in liquid state, into any navigable

2    water of the United States, provided that the Secretary of the

3    Army, whenever in the judgment of the Chief of Engineers

4    anchorage and navigation will not be injured thereby, may prevent

5    the deposit of any material above mentioned in navigable waters,

6    within limits to be defined and under conditions to be prescribed

7    by him, provided application is made to him prior to depositing

8    such material; and, whenever any permit is so granted, the

9    conditions thereof shall be strictly complied with, and any

10   violation thereof shall be unlawful."

11       Now, in order to prove this charge against you, the

12   government would have to prove the following elements, each

13   beyond a reasonable doubt, and they are:

14       First, that you caused refuse to be discharged or deposited

15   into a navigable water of the United States;

16       And, second, you did so without and permit and a -- or in

17   violation of a permit.

18       Now, I want to share with you some definitions that apply to

19   what I have just told you.

20       The word "cause" means that the result was a probable

21   consequence of your conduct.

22       The word "refuse" includes all foreign substances and

23   pollutants apart from those flowing from streets and sewers and

24   passing therefrom in a liquid state.

25       "Discharge" means to pour forth or emit.
```

1          "Deposit" means to lay, place, or throw something down.

2          The term "navigable waters" means the waters in the United

3     States, including the territorial seas;

4          And a "permit" is a permit issued by the U. S. Army Corps of

5     Engineers.

6          Are there any objections to the elements as I have recited

7     them?

8               MR. WRIGHT:  No, Your Honor.

9               MS. GALLAGHER:  No, sir.

10              THE COURT:  All right.  Now, I note that you are also

11    named in Counts 1 and 3 of the superseding indictment, but as I

12    understand it, will plead guilty to Count 2 and, with regard to

13    Count 2, I now want to go over with you the maximum and any

14    minimum sentences you may face as a result of your plea, and that

15    is:  A maximum term of imprisonment of one year and a minimum

16    term of imprisonment of 30 days; a fine of up to $25,000.00 per

17    day of violation; alternatively, the maximum fine of $100,000.00,

18    or twice the gross pecuniary gain or loss resulting from your

19    conduct, whichever is greater; and a maximum term of supervised

20    release of one year.  A mandatory special assessment of $25.00

21    would be required.  Restitution could also be ordered, if it were

22    found to be applicable.

23         Next, I want to talk with you regarding the federal

24    sentencing guidelines.  They are -- well, first of all, have you

25    talked with your attorneys about the federal sentencing

1    guidelines and how they generally work?

2              THE DEFENDANT:  Yes, Your Honor, I have.

3              THE COURT:  All right.  Have they shown you that chart

4    in the back of the book?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  And have they explained to you how that

7    chart might work in your particular case?

8              THE DEFENDANT:  "Might", being the operative word, yes.

9              THE COURT:  Yes.  I used that term advisedly.  All

10   right.  Very well.

11        The guidelines are advisory, meaning they're not mandatory

12   or don't have to be followed, but they nevertheless will play an

13   important role in your case from here on out.

14        This Court will consider the factors set forth in 18 U. S.

15   C. Section 3553(a), including the advisory guidelines, in

16   determining the appropriate sentence in your case.

17        I now want to ask you some questions that will help me to

18   understand your understanding of the guidelines.

19        Have you discussed with your attorneys the various factors

20   which apply in determining what the sentence in your case may be

21   under the advisory guidelines?

22              THE DEFENDANT:  I have, Your Honor.

23              THE COURT:  And do you understand that on Count 2, you

24   cannot in any event receive a greater sentence than the statutory

25   maximum that I explained to you a few moments ago?

1              THE DEFENDANT:  Yes, Your Honor.

2              THE COURT:  Do you understand the Court will not

3    determine the sentence for your case until a later date, when a

4    Presentence Report has been completed, and both you and the

5    government have had an opportunity to challenge the facts and

6    analysis reported by the probation officer?

7              THE DEFENDANT:  I do understand.

8              THE COURT:  Do you also understand that under a concept

9    known as "relevant conduct", this Court, in determining the Total

10   Offense Level for sentencing purposes under the guidelines, may

11   take into account any conduct, circumstances or injuries relevant

12   to the crime of which you may be convicted?

13             THE DEFENDANT:  I do.

14             THE COURT:  Do you understand that after the Court has

15   determined what advisory guidelines apply to your case, the Court

16   has the authority to vary or depart from the advisory guidelines

17   and impose a sentence that is more severe or less severe than the

18   sentence called for by the guidelines?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  Do you understand, in determining your

21   sentence, the Court is obligated to calculate the applicable

22   sentencing guideline range, and to consider that range, possible

23   departures under the guidelines, and other sentencing factors

24   under 18 U. S. C. Section 3553(a)?

25             THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Do you understand that parole has been

2     abolished and, if you're sentenced to prison, you will not be

3     released on parole?

4          THE DEFENDANT:  I'm sorry, sir?

5          THE COURT:  Parole has been -- I want to make sure you

6     understand that parole has been abolished in the federal system

7     and, if you're sentenced to prison, you will not be released on

8     parole.

9          THE DEFENDANT:  Oh, I do understand that.

10          THE COURT:  All right.  And do you understand that if

11     the Court accepts your plea of guilty and the sentence ultimately

12     imposed upon you is more severe than you had hoped for or

13     expected, then you will still be bound guilty plea and would have

14     no right to withdraw it?

15          THE DEFENDANT:  Regrettably, yes.

16          THE COURT:  All right.  Next, I want to talk with you

17     regarding your trial and constitutional rights.

18       You have the right to continue to plead not guilty and

19     maintain a not guilty pleas throughout these proceedings,

20     including at trial.

21       You have the right to be represented by counsel.

22       You have the right to a speedy and public trial by a jury

23     composed of citizens of this district.

24       You have the right to confront and have your attorney cross

25     examine witnesses, and have your attorney move to suppress any

1  evidence he or she believes was illegally or unconstitutionally

2  obtained.

3       You have the right not to testify or otherwise incriminate

4  yourself and your exercise of this right cannot be held against

5  you.

6       Do you understand these rights so far?

7            THE DEFENDANT:  Yes, Your Honor.

8            THE COURT:  You have the right to have the government

9  come in here and prove its case beyond a reasonable doubt.

10      The jury's verdict would have to be unanimous.

11      You have the right to present evidence on your own behalf.

12      You have the right to testify on your own behalf at trial;

13      And you have the right to subpoena witnesses to testify for

14  you.

15      Do you understand all of these rights?

16            THE DEFENDANT:  I do.

17            THE COURT:  Any of them that you don't understand or

18  that you have questions about?

19            THE DEFENDANT:  No, Your Honor.

20            THE COURT:  Other than your right to counsel, do you

21  understand that you will be giving up all of these rights by

22  entering a plea of guilty?

23            THE DEFENDANT:  Yes, Your Honor.

24            THE COURT:  And, just so the record is clear, do you

25  understand that by entering a plea of guilty, you're giving up

1    any challenge or any motion to disqualify the U. S. Attorney's

2    Office in this case?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  All right.  Do you understand that once you

5    have entered a plea of guilty, there is not going to be any

6    trial, no jury verdict, and no findings of innocence or guilt

7    based on disputed evidence presented to me or to a jury?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  Do you believe that you fully understand

10   the consequences of entering a plea of guilty?

11             THE DEFENDANT:  Yes, I do.

12             THE COURT:  And, Ms. Gallagher, having reviewed this

13   case and the plea agreement in detail with your client, do you

14   believe that he fully understands his rights and fully

15   understands the consequences of entering a plea of guilty?

16             MS. GALLAGHER:  Yes, sir.

17             THE COURT:  All right.  I note that there is a

18   Stipulation of Facts that the parties have entered into.  Is

19   there any objection to the Court utilizing the stipulation in its

20   consideration for the factual basis for the plea?

21             MR. WRIGHT:  No objection by the United States, Your

22   Honor.

23             MS. GALLAGHER:  No objection by Mr. Tis.

24             THE COURT:  All right.  Very well.

25        Mr. Tis, will you please stand?

1          As to the charge contained in Count 2 of the superseding

2     indictment, how do you plead, sir, guilty or not guilty?

3               THE DEFENDANT:  Guilty, Your Honor.

4               THE COURT:  You may be seated.

5          Your counsel has been provided with a written Plea of Guilty

6     Form.  I would ask that you go over that with her, if necessary,

7     sign and date it.  Then I will ask her to sign it and tender it

8     to the Court.

9          All right.  I'll note for the record that the defendant has

10    signed and dated the written he Plea of Guilty Form, it has been

11    witnessed by his counsel, and I will order that it be made a part

12    of the recording for this proceeding.

13         Mr. Tis, is this plea the result of any threat, or coercion,

14    or harassment of you by anyone?

15              THE DEFENDANT:  No.  This plea did not contain any of

16    those things.  I am --

17         (Counsel & defendant confer.)

18              THE DEFENDANT:  No.  That's it, Your Honor.

19              THE COURT:  All right.  Is it the result of any promise

20    or inducement other than those contained in the plea agreement?

21              THE DEFENDANT:  No, Your Honor.

22              THE COURT:  Are you pleading guilty to protect anyone?

23              THE DEFENDANT:  I'm sorry?

24              THE COURT:  You are pleading guilty to protect anyone?

25              THE DEFENDANT:  No, Your Honor.

1          THE COURT:  Are you acting voluntarily and of your own

2     free will in entering this guilty plea?

3          THE DEFENDANT:  I am.

4          THE COURT:  Has anyone promised or predicted the exact

5     sentence which will be imposed?

6          THE DEFENDANT:  No, Your Honor.

7          THE COURT:  Do you understand that no one could know at

8     this time the exact sentence which will be imposed?

9          THE DEFENDANT:  I do.

10         THE COURT:  Have your attorneys adequately represented

11    you in this matter?

12         THE DEFENDANT:  They have.

13         THE COURT:  Have your attorneys left anything undone

14    which you think should have been done?

15         THE DEFENDANT:  No, Your Honor.

16         THE COURT:  Have you or your attorneys found any

17    defense to the charge contained in Count 2?

18         THE DEFENDANT:  Can you explain that to me further?

19    I'm not sure I understand that question, Your Honor.

20         THE COURT:  Well, I always ask that to the defendant

21    but, frankly, it might be a better question for the attorneys,

22    but I'm asking if you've found any legal or factual defense to

23    the charge in Count 2 and, if that requires an explanation, I

24    think I might refer you to your attorneys or --

25         THE DEFENDANT:  No.  My answer is no to that.

1          THE COURT:  All right.  You are, in fact, guilty of the

2     crime charged in Count 2?  In other words, did you do it?

3          THE DEFENDANT:  I have signed my name to these

4     documents.  If you're asking me in a court of law under oath, no,

5     I don't believe I have committed a crime, but I am pleading

6     guilty.

7          THE COURT:  All right.  Counsel, we need to talk about

8     this.  I don't take pleas when the defendant doesn't admit guilt.

9          THE DEFENDANT:  I -- yeah.  I guess I misunderstood

10    what you were asking me, Your Honor.  The events of that date,

11    and how they occurred, and the failure to have a permit, because

12    I was an officer of that company, I do agree with everything that

13    was written there.  So, to that extent, I am pleading guilty to

14    Count Number 2.  As a layman, I feel differently, but based on

15    the law, I am pleading guilty, and I understand that.

16         THE COURT:  Well, let me ask the question again.

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  Because this is an important point.  My

19    practice, and it's only a practice in theory, because this has

20    actually never happened before, but my approach to this is that a

21    defendant who says -- tells me they're not guilty of a crime goes

22    to trial, okay, and you just told me that you don't believe

23    you're guilty of a crime.  So --

24         THE DEFENDANT:  I do believe I am guilty of this

25    offense.  There's -- there's no doubt that as we wrote this up

1    and I read it, and re-read it, and put my name on it that, as an

2    officer of that company, I am guilty of that.

3       The part that I -- perhaps isn't -- should be part of this

4    hearing is that there were people that we had hired that were

5    charged with doing these things and their failure results in my

6    failure, but because of the way the law is written, I am guilty

7    of this crime.

8       THE COURT:  Do counsel want to shed some light on this?

9       MS. GALLAGHER:  Yes, Your Honor.  I think it's an issue

10    that comes up, and I believe that what Mr. Tis is trying to say

11    is that he's accepting responsibility --

12       THE COURT:  Let me ask you to pull the mic there closer

13    to you.

14       MS. GALLAGHER:  Oh, I'm sorry, sir.

15       THE COURT:  So everybody, including your client, can

16    hear you.

17       MS. GALLAGHER:  He -- he has accepted -- has accepted

18    his plea and accepts responsibility as to the elements of Count

19    2.  There has been discussion, as the Court notes, over the

20    weekend, and I'm sure, the Court notes, over this concept of

21    responsible corporate officer.  It is somewhat confusing, I

22    believe, for my client and it's that term of art where he -- I

23    believe he said he understands, as the law to be, the duties

24    which are imposed upon him, but he accepts those and accepts that

25    he is guilty, as stated, in the Stipulation of Facts.

1           THE DEFENDANT:  I apologize for any confusion, Your

2      Honor.

3           THE COURT:  Well, let me approach it this way.  I

4      explained to you the elements earlier of this offense, elements

5      being subparts of an offense that the government would have to

6      prove in order to establish the offense.  Let me approach it this

7      way.

8        Based on -- well, first of all, the first element, as I

9      described it, to which no one objected, is that you caused refuse

10     to be discharged or deposited into a navigable water in the

11     United States.  Did you, in fact, do that?

12          THE DEFENDANT:  The corporation that I was an officer

13     of did that, yes, Your Honor, and, as an officer, that

14     responsibility ultimately falls upon me.

15          THE COURT:  And you did not have -- and then, the

16     second element is, that you did so without a permit or in

17     violation of a permit?

18          THE DEFENDANT:  We did not have a permit and, again, as

19     an officer of the company, that falls upon me.

20          THE COURT:  All right.  Does counsel have anything to

21     add on this point?

22          MR. WRIGHT:  No, Your Honor.

23          THE COURT:  Well, this exchange is rather unique, in my

24     experience.  I think it's probably adequate, but I'm going to be

25     reviewing it, but I'm going to go ahead and proceed with the

1    hearing.

2        I will find that the defendant is competent and capable of

3    entering an informed plea; that the plea is freely and

4    voluntarily made; that the defendant understands the nature of

5    the charges and is aware of the consequences of the plea.

6        I will find that the defendant understands his rights and

7    understands that he is giving up these those rights by entering a

8    plea of guilty.

9        I'm going to defer a factual basis finding, but accept the

10   plea of guilty, and defer adjudging the defendant guilty until

11   the time of sentencing.

12       I will ask the probation officer to prepare a Presentence

13   Investigation Report.

14       Mr. Tis, it is important that you cooperate fully with the

15   probation officer in the preparation of the Presentence Report.

16   If you fail to cooperate fully and truthfully with the probation

17   officer, you may be subject to an enhancement of your sentence or

18   the forfeiture of certain sentence reductions for which you might

19   otherwise be eligible.

20       It is also important that you not commit any additional

21   crimes between now and sentencing, as there are additional

22   punishments that may be imposed for committing additional crimes.

23       I'm going to set this matter for sentencing on June 22nd,

24   2015, at 2:00 p.m.  I will put my other presentence dates in my

25   post-plea order.

1          I note that the defendant is currently on bond.  Is there

2     any objection to the defendant remaining on his current bond

3     pending sentencing?

4               MR. WRIGHT:  No, Your Honor.

5               THE COURT:  All right.  I will allow him to do so.

6          One thought I have on this is, as I looked at a little bit

7     of research before the hearing, one aspect of this, even in terms

8     of the defendant's response today, is my research reveals that it

9     doesn't look like there is a scienter element to this particular

10    offense, that it is, in fact, a regulatory offense.

11         Does counsel agree with that characterization?

12              MS. GALLAGHER:  Absolutely, Your Honor.

13              MR. WRIGHT:  Yes, Your Honor.

14              THE COURT:  All right.  Well, that probably is

15    contributing to the defendant's perspective on this.

16              MS. GALLAGHER:  If I may, Your Honor, it is one of the

17    issues and, as I believe that Mr. Tis tried to say as he went

18    through it, he understood the facts as applied to the law, the

19    strict liability nature of the crime, and his position within the

20    corporation at that time is what he, I believe, perhaps

21    inartfully, you know, not in a legal sense, has had to come to

22    understand.

23         I don't think there was any indication on his part or any

24    belief on his part that he was not guilty of that term, but

25    because we believe it's a strict liability crime, we agree with

1    the government on that, and it's on the basis of his holding a

2    position as an officer of the corporation at that time and in

3    control of these issues that that attaches to it.  So it's a

4    little more confusing.

5                THE COURT:  All right.  All right.  Well, I appreciate

6    that.  As is my practice with charges that I'm you unfamiliar

7    with, I'm going to be reviewing the factual basis in advance of

8    sentencing.  If I feel like you need the assistance of counsel on

9    that, I might ask for briefing, and I'll also, as a part of that

10   process, be reviewing the colloquy that I've had today, but is

11   there anything else we need to take up today?

12               MR. WRIGHT:  No, Your Honor.

13               MS. GALLAGHER:  Your Honor, just for purposes of the

14   record, and I would ask this very quick, very briefly, I don't

15   want to make an issue of it.

16         There was a memorandum, or a document, filed late Friday

17   afternoon by Mr. Farrell or by his counsel.  We would just -- it

18   would be our position, Mr. Tis's position, that Mr. Farrell has

19   no standing with respect to Mr. Tis's plea.  We understand he may

20   have issues or objections to the government's case, or to the

21   memorandum filed by the government, but no standing as to an

22   opinion as to whether or not there is a factual basis for Mr.

23   Tis's guilty plea before this Court.

24               THE COURT:  I was aware of that filing.  I haven't seen

25   it yet.  It's another unique aspect of this case that I haven't

1    seen before in terms of an approach to a factual basis, so I'm

2    sure I'll read it, at some point, but I understand your -- I

3    understand your position.

4            MS. GALLAGHER:  It's just, quite candidly, Your Honor,

5    it placed my client under great pressure on Friday, since Friday,

6    to have to explain to him that, collectively, counsel have never

7    seen, and all of us were former prosecutors, also, a co-defendant

8    basically object to the basis of a guilty plea for another

9    co-defendant.

10           THE COURT:  Well, I've not seen that before either and,

11   as counsel for the government can tell you, factual basis is a --

12   is something I take a very close, very close look at,

13   particularly in cases where the charges are unfamiliar to me,

14   which is definitely the case here.  So -- but I'll give it such

15   consideration as it should be given.

16           MS. GALLAGHER:  Thank you.

17           THE COURT:  Thank you.

18       (Proceedings concluded at 10:03 a.m., March 16, 2015.)

19

20   CERTIFICATION:

21       I, Ayme A. Cochran, Official Court Reporter, certify that

22   the foregoing is a correct transcript from the record of

23   proceedings in the matter of United States of America, Plaintiff

24   v. William Tis, Defendant, Criminal Action No. 2:14-cr-00264, as

25   reported on March 16, 2015.

1    s/Ayme A. Cochran, RMR, CRR          April 28, 2015

2    Ayme A. Cochran, RMR, CRR                    DATE

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25